UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NOVELTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-1229 SEB-JMS |
| | ) | |
| MOUNTAIN VIEW MARKETING, INC., | ) | |
| and MCLANE COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO NOVELTY'S
MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

Defendants Mountain View Marketing, Inc. ("Mountain View") and McLane Company,

Inc. ("McLane"), by counsel, respectfully submit this opposition to plaintiff Novelty, Inc.'s

("Novelty's") "Motion To Dismiss Defendants' Counterclaims."

**Preliminary Statement**

The general rule is that no civil liability arises from the act of asserting a legal claim.

However, that general rule has important exceptions.  If the claim is objectively baseless and

brought for an ulterior purpose, immunity does not apply.  Such a claim may give rise to liability

as a violation of federal antitrust law or common law unfair competition (if aimed at a

competitor).  It may also be a common law abuse of process (regardless of the plaintiff's

relationship to the target).

Novelty began this litigation in October 2007 by making 12 claims, based on three

designs.  From the start, some of Novelty's assertions were objectively baseless; for example, it

claimed to have registered copyrights in all three designs prior to bringing suit, when in fact it

had registered only two.  In June 2008, Novelty sought leave to amend its complaint and expand

its case to a staggering 248 claims based on 62 designs.  Most of Novelty's claims were based upon a list of codes and product descriptions from which, only a month earlier, Novelty had represented to this Court it was simply "impossible to tell" whether a product was infringing. Much of the remaining claims were facially invalid, as a matter of law or fact.

After the Court denied Novelty's first motion to amend, Novelty amended its complaint to assert 84 claims based upon 21 products.  One hundred sixty-four claims, for which Novelty had vigorously asserted it had a good-faith basis, suddenly disappeared without explanation or comment.  This year, shortly after the defendants sought leave to assert their counterclaims, Novelty moved to amend its complaint yet again.  This time, Novelty removed another 40 claims (10 products) without any reasonable explanation why the claims were asserted in the first place. The Court dismissed these 40 claims with prejudice.  Today, Novelty has 44 claims remaining, based on 11 designs.

What was Novelty's purpose in taking this suit from 12 claims in October 2007 to 248 in June 2008?  As set forth in the counterclaims, not long after filing its original suit, Novelty decided to use this litigation as a means to eliminate its competitor, Mountain View Marketing. At the same time Novelty began exaggerating its claims, Novelty began using its litigation as a stick to inflict substantial defense costs on both defendants and to pry Mountain View from its parent company, McLane.  Specifically, Novelty's representatives approached McLane, declared that the lawsuit was worth millions of dollars, and then sought significant concessions from McLane for Novelty's proposed acquisition of Mountain View.

Had Novelty been successful in acquiring Mountain View, it would have eliminated its competitor and further solidified its dominance in the market of full-service novelty product

distribution.  Novelty's combination of objectively baseless claims and anticompetitive purpose in asserting them eliminates any immunity Novelty might have had for its litigation misconduct.

As set forth in the counterclaims, Novelty's conduct has given rise to liability under federal antitrust and state common law principles.  The defendants have given Novelty fair notice of the claims against it, and stated plausible claims for relief – in full compliance with *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal*.  Novelty's motion to dismiss should be denied.

## ARGUMENT

### Decisional Standard

In *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), the Supreme Court scrapped the formulation from *Conley v. Gibson*, 355 U.S. 41, 47 (1957), that a complaint should not be dismissed unless it appeared beyond doubt that the plaintiff could prove "no set of facts" that would entitle it to relief.  But *Bell Atlantic* did not do away with "the basic notice-pleading standard."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).  Rather, in *Conley's* place, what *Bell Atlantic* and its progeny require is that a plaintiff "provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'"  *Tamayo*, 526 F.3d at 1083 (quoting *Lang v. TCF Nat'l Bank*, 249 Fed. Appx. 464, 2007 WL 2752360, at *2 (Sept. 20, 2007)); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.").

Fair notice.  Plausible entitlement to relief.  If the defendants have set forth enough detail to give Novelty fair notice of their claims, and demonstrated a plausible entitlement to relief, then Novelty's motion to dismiss should be denied.

Novelty's motion claims that the defendants failed to allege a single element of their counterclaims properly; therefore, each of the particular allegations relating to each counterclaim is discussed below.  However, a careful reading of Novelty's motion to dismiss reveals that – despite its protestations to the contrary – Novelty is not really claiming that the counterclaims fail to meet the Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  What Novelty's motion really says is that Novelty disagrees with the counterclaims' characterization of events, and that the counterclaims should be dismissed because defendants – at the pleading stage – have failed to refute Novelty's potential defenses.

For example, Novelty argues that Mountain View's antitrust counterclaim should fail because it did not rebut all of Novelty's potential arguments regarding "the size and strength of competing firms, history of entry and expansion by rivals, pricing trends and practices in the industry, ability of customers to substitute other distribution services, ability of consumers to purchase comparable goods from other sources, and consumer demand."  Mot. at 11.  The case Novelty cites to argue that all of these facts must be in the complaint is *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005).  *Dentsply* was an appeal from a final judgment following a bench trial.  Nevertheless, the allegations in Mountain View's counterclaims do define the market, explain the concentration of participants in the market, explain Novelty's power in that market, explain the barriers to entry in that market, and explain other practices in the industry.  To characterize, as Novelty does, the defendants' counterclaims as making only "conclusory" statements is to ignore these factual allegations altogether.

In any event, as the Seventh Circuit has made clear, an antitrust complaint "need not anticipate or attempt to defuse potential defenses.  A complaint states a claim on which relief

may be granted when it narrates an intelligible grievance that, if proved, shows a legal

entitlement to relief." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

Even *Bell Atlantic* rejected the notion that it was establishing any "heightened pleading standard"

for antitrust claims, 550 U.S. at 569 n.14, or that a complaint need do anything more than "allege

facts suggestive of illegal conduct." *Id.* at 563 n.8 ("[W]hen a complaint adequately states a

claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to

find evidentiary support for his allegations or prove his claim to the satisfaction of the

factfinder.").

At bottom, the defendants' counterclaims have given Novelty fair notice of the claims

against it.  And, taking the facts alleged as true, it is much more than "speculation" that the

defendants will prevail on those claims.  The claims, as stated, allow the court "to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at

1949.  Novelty's motion should be denied.

## I.     Mountain View Has Sufficiently Pleaded Novelty's "Sham Litigation" Conduct. *Noerr-Pennington* Immunity Does Not Apply.

"Those who petition government for redress are generally immune from antitrust

liability." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508

U.S. 49, 56 (1993) ("*PREI*").  That immunity was first recognized by the Supreme Court in

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and

explained further in *Mine Workers v. Pennington*, 381 U.S. 657 (1965) (giving rise to the phrase

"*Noerr-Pennington* immunity").  However, while acknowledging such immunity, the Supreme

Court has also warned that immunity does not apply when "petitioning activity, ostensibly

directed toward influencing governmental action, is a mere sham to cover . . . an attempt to

interfere directly with the business relationships of a competitor."  *PREI*, 508 U.S. at 56 (internal quotations omitted) (alteration in original).

In *PREI*, the Supreme Court explained that litigation aimed at a competitor is not immune from antitrust liability if two factors are met:  (1) "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) "the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor, through the use [of] the governmental *process* – as opposed to the *outcome* of the process – as an anticompetitive weapon."  508 U.S. at 60-61 (citations and internal quotations omitted) (alterations in original).  Mountain View's antitrust counterclaims have alleged facts meeting these two factors.  Therefore, Novelty's motion to dismiss on the basis that it is immune from suit should be denied.

### A.     Mountain View Has Alleged Facts Giving Rise To A Reasonable Inference That Novelty Has Asserted More Than 200 Objectively Baseless Claims.

Mountain View's counterclaims allege that more than 200 claims asserted by Novelty in the course of this litigation (and the related state court case) are "objectively baseless."  For purposes of Novelty's motion to dismiss, the test here is whether the counterclaims have sufficiently pleaded facts showing "that it is plausible, rather than merely speculative," *Tamayo*, 526 F.3d at 1083, that Novelty had no "reasonable belief that there is a chance that [a] claim may be held valid upon adjudication."  *PREI*, 508 U.S. at 62-63 (quoting *Hubbard v. Beatty & Hyde, Inc.*, 178 N.E.2d 485, 488 (Mass. 1961)).

With but a few exceptions, Novelty's objectively baseless claims fall into four basic categories:  (1) those that Novelty made in its original filings; (2) those that Novelty attempted to make in June 2008, then dropped; (3) those that Novelty made in October 2008, only to dismiss with prejudice in April 2009; and (4) various claims based on specious legal theories.  The facts

alleged in the counterclaims make it clear that no objectively reasonable litigant could realistically expect success on the merits of these claims.

1.      **Novelty's Original Filings Contained Objectively Baseless Claims.**

This case began in September 2007 as a straightforward dispute over the alleged infringement of three designs on cigarette cases:  a skull, a dragon, and a unicorn.  The designs then at issue are pictured here:

  

Novelty asserted four claims with respect to each design – copyright infringement, trade dress infringement, state law unfair competition, and state law crime victim's liability.[1]

Novelty represented in its original Complaint, in a motion for preliminary injunction filed shortly thereafter, and in a sworn declaration filed in support of that motion, that it already had registered copyrights in all three designs.  (MVM Counterclaim at ¶¶ 11-18).  The defendants later learned that Novelty's representations were false.  (*Id.* at ¶¶ 19-20).  Novelty had, as of its initial filings, registered only the skull and dragon designs with the Copyright Office.  (*Id.* at ¶ 20).  Nevertheless, Novelty asserted that the District Court had jurisdiction over its Copyright Act claim with respect to the unicorn design, *contra* 17 U.S.C. § 411(a),[2] as well as a right to

---

[1] Throughout this litigation, Novelty has asserted these four claims with respect to every design or product it has added to, or removed from, its complaint.

[2] 17 U.S.C. § 411(a) states, in relevant part, that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."

statutory damages and attorneys fees under the Copyright Act with respect to that design. *Contra* 17 U.S.C. § 412.[3]  Therefore, Novelty's initial filings, at least with respect to the unicorn design, were objectively baseless.

### 2.    Novelty's June 2008 Filing Contained Objectively Baseless Claims.

On March 21, 2008, Novelty issued a discovery request demanding that Mountain View produce UPC numbers and corresponding product descriptions for <u>every</u> novelty and lighter product ever sold since 2004 – even though the lawsuit then was only about three designs (the skull, dragon, and unicorn).  (MVM Counterclaim at ¶ 37).  After Novelty represented to the Court, on multiple occasions, that such a list was necessary to identify additional allegedly infringing products, Mountain View complied with the Court's request that it produce the list. (*Id.* at ¶37).  However, after receiving the list, Novelty reversed itself completely – stating in a May 1, 2008 filing that it would be "impossible to tell" from only product descriptions and UPC codes what products were allegedly infringing.  (*Id.* at ¶¶ 38, 41) (*see also* DE #73, DE #82).

Just one month later, in June 2008, Novelty attempted to amend its complaint to add 59 additional products (or categories of products) to the litigation – presenting an additional 236 claims.  (*Id.* at ¶ 47).[4]  For 40 of the product categories for which Novelty asserted claims, Novelty simply provided the following list of item descriptions and UPC codes (rather than photos, as it did for the other products):

| | |
|---|---|
| BUBBLE PEN | 60870759198 |
| BULLET LIGHTER | 80261620030 |
| CELL PHONE FLASK W/CASE Z065 | 60870728030 |
| CELL PHONE REFILLABLE LIGHTER | 69617498800 |

---

[3] 17 U.S.C. § 412 states, in relevant part, that "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

[4] The counterclaims miscount the number of total products / claims Novelty attempted to inject into this case through its June 2008 filing.  The counterclaims state 61 products; it was actually 62.

| | |
|---|---|
| FLASK 6 OZ EMBLEM Z165 | 60870728025 |
| FLASK 6 OZ WITH PLEATHER Z165 | 60870728026 |
| FLASK MINI WITH PEWTER | 60870727112 |
| FLASK STAINLESS STEEL - PLAIN | 60870737501 |
| FLEXIBLE LED LIGHT Z355 | 60870737661 |
| LASER POINTER 42 TIPS | 60870737837 |
| LASER POINTER W/5 TIPS X306 | 60870737813 |
| LASER/LED PEN Z494 | 60870759136 |
| MINI FLASK K/C Z534 | 60870728020 |
| SHOTGUN SHELL LIGHTER | 80261620020 |
| SLIDE LIGHTER | 64715020316 |
| WATER BOMB SLINGSHOT X226 | 60870777225 |
| WATER BOMBS (50CT) Y502 | 3096838097 |
| WATER BOMBS 100 COUNT | 60870777023 |
| CIG CASE AMERICAN RIDER Z473 | 60870727304 |
| CIGARETTE CASE 20 PC Z025 | 60870728019 |
| CIGARETTE CASE AMERICA Z514 | 63673011040 |
| CIGARETTE CASE FEELIN FREE X066 | 60870728042 |
| CIGARETTE CASE KING SIZE ENGRA Z513 | 60870727303 |
| CIGARETTE CASE LEATHER LOOK X296 | 60870728049 |
| CIGARETTE CASE MYSTICAL SERIES | 60870728066 |
| CIGARETTE CASE NATURE LIVES X356 | 60870728051 |
| CIGARETTE CASE W/EMBLEM Z215 | 60870728036 |
| CIGARETTE CASE WITH RESIN X376 | 60870777297 |
| Novelty Cigarette Case | 60870728028 |
| Slim Cigarette Strong Case | 60870727181 |
| Empty Display Box for Item# M-27181 | 60870788813 |
| Empty Display Box for Item# M-28028 | 60870788814 |
| Portable Cigarette Ash Tray | 60870727180 |
| Empty Display Box for Item# M-27180 | 60870788812 |
| Display Box for M-27181 | 60870788360 |
| Item# CC20 (85MM), Cigarette Case | 60870728019 |
| Extra Boxes for Item# M-28019 | 60870719139 |
| Poker cigarette Case | 60870728021 |
| Empty Display Box for M-38721 | 60870738721 |
| Tin Case | 60870728054 |

This information came from the same list, produced by Mountain View, from which Novelty had

already represented to the Court it was "impossible to tell" whether an item was infringing.  (*Id.*

at ¶ 47).

Mountain View's counterclaims set forth Novelty's representations to the Court

regarding this list, and those representations make it clear that Novelty had no "reasonable

belief" these claims would "be held valid upon adjudication."  *PREI*, 508 U.S. at 62-63.  In fact,

Novelty simply had no idea what the specific Mountain View products encompassed by the 40

UPC codes were, much less looked like, at the time Novelty was claiming infringement – as such

was "impossible to tell" from the information in the list.  Moreover, after the Court denied

Novelty's first motion to amend, Novelty tried again.  The second time around, Novelty dropped

the list of product categories from its complaint entirely – conceding that it had no basis for the claims it had asserted the first time.  These facts also give rise to a reasonable inference that those claims were objectively unreasonable.

>    3.    **Novelty's October 2008 Filing Contained Objectively Baseless Claims.**

On October 24, 2008, Novelty was finally granted leave to file what became the First Amended Complaint.  (MVM Counterclaim at ¶ 49).  In it, Novelty asserted four claims for each of 21 designs.  (*Id.* at ¶ 50).  As set forth in the counterclaims, a majority of these 84 claims had no valid basis whatsoever.  (*Id.* at ¶¶ 51-77).  But what is particularly important with respect to these claims is that – since the filing of the defendants' counterclaims – Novelty has dismissed 10 of the product designs (and thus 40 of its claims).  And the Court has ordered that dismissal with prejudice.  Thus, not only has Mountain View alleged facts showing a plausibility that Novelty's claims were objectively baseless, Novelty's own conduct admits the same.

For each of these 10 dismissed products, Novelty had at one time claimed that "Defendants copied each and every part of the toys shown on Exhibit A. . . . Every aspect of Defendants' products is an infringement."  (DE # 94, "Plaintiff's Reply To Defendants' Opposition To Plaintiff's Motion For Leave To File First Amended Complaint," at 3-4).  Then, Novelty changed course, claiming that only certain aspects were infringing – specifically that the product's packaging infringed Novelty's claimed rights.

However, early in the litigation, when Novelty compelled Mountain View to produce photos of all novelty products it had sold since January 1, 2004, (MVM Counterclaim at ¶ 24), Mountain View expressly and clearly informed Novelty that it did not necessarily sell the products in the packaging shown in the photos.  Specifically, Mountain View's counsel informed Novelty's counsel, in writing, that "the photographs [did] not always depict the packaging or

labeling in which the novelty products were produced for sale or sold by Mountain View Marketing, once the product was imported."  (*Id.* at ¶ 25).

Despite this clear explanation and warning, and without ever investigating whether there was actually a basis for its claims, Novelty asserted them anyway.  (*See, e.g.*, *id.* at ¶¶ 56, 59, 60, 61, 62).  Months later, Novelty eventually dismissed its claims – but only after forcing the defendants to incur significant defense costs related to them – based upon the following products' packaging or display:

    

**2 in 1 Laser Pointer Pen**     **Surf Shop Display**     **Surf Board Necklace**     **Flip Flop Keychain**     **Squish Pen Display**

In addition, Novelty dismissed 20 claims that Novelty claimed to have a legitimate basis for – right up to the day Novelty removed them from the case.  Those claims were based on: (1) the design of a skeleton coffin ashtray; (2) the design of packaging used for "metal racer" toy dirt bikes; (3) the design of a Mothers Day Bear and the sound it made when squeezed; (4) the design of packaging for a travel-sized Texas Hold 'em poker set; and (5) the design of packaging for a full-sized Texas Hold 'em poker set.  As set forth in the counterclaims, Novelty had no reasonable basis for asserting these claims in the first instance.

For example, Novelty's coffin ashtray design "looks nothing like Mountain View's product and cannot colorably be characterized as similar to the Mountain View design." (MVM Counterclaim at ¶ 52). A mere visual comparison of the products bears that out:



**Mountain View's Ashtrays**



**Novelty's Ashtrays**

The ashtrays look <u>nothing</u> alike, yet Novelty claimed that the defendants had infringed Novelty's intellectual property rights in the product design. As for the "metal racer" toy dirt bikes, Mountain View purchased and distributed its product, using the packaging Novelty claimed was infringing, <u>a full year before Novelty claimed to have created the package design</u>. (*Id.* at ¶¶ 57-58). With respect to the Mothers Day Bear and Texas Hold 'em sets, Novelty did not create any protectable designs that were sold by Mountain View. (*Id.* at ¶¶ 63-66, 69).

When Novelty dismissed these October 2008 claims with prejudice, it did so having the same information in hand as it did when it asserted them. Thus, Novelty's conduct since the filing of the counterclaims confirms that Novelty had no reasonable basis for asserting these claims. (*Id.* at ¶¶ 51-76).

    **4.**    **Novelty Has Asserted, And Continues To Assert, Other Objectively Baseless Legal Theories.**

As set forth in the counterclaims, Novelty has alleged theories of recovery that are themselves objectively baseless.  For example, without any evidence in support, Novelty has alleged that the defendants <u>intentionally</u> infringed each of the designs set forth in its original complaint, attempted amendment, and amended complaints.  (MVM Counterclaim at ¶ 71-72).  Contrary to the dictates of 17 U.S.C. § 412, Novelty has alleged a right to statutory damages and attorney's fees under the Copyright Act for the alleged infringement of designs that were not registered with the Copyright Office until <u>after</u> this litigation commenced.  (*Id.* at ¶¶ 55, 56, 58-62, 64, 66, 68).  Novelty has alleged trade dress infringement on the theory that its product designs are "inherently distinctive."  This contravenes the United States Supreme Court's opinion in *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 216 (2000), rejecting such a theory and holding that "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, <u>only</u> upon a showing of secondary meaning."  (MVM Counterclaim at ¶¶ 74-75).  Not only do these legal theories lack merit, no reasonable litigant would have asserted them in the first instance.  Thus, they too are a basis for liability under the "sham litigation" exception to *Noerr-Pennington* immunity.  10-77 Federal Antitrust Law § 77.4 ("[I]f the antitrust defendant asserts two theories in its lawsuit, one genuine, but the other not in good faith, immunity will only extend to the former claim.") (citing *Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*, 795 F. Supp. 639, 648-49 (S.D.N.Y. 1992)).

5.    **Novelty's Motion to Dismiss Presents No Argument Explaining Any Deficiencies in Mountain View's Allegations.**

Novelty's motion to dismiss is not really about the counterclaims' specific allegations. Rather, it is Novelty's attempt to argue the propriety of what it has done.  This stage of the proceedings is not the place for argument by the parties regarding who ultimately wins regarding the propriety of Novelty's actions.  *Tamayo*, 526 F.3d at 1083 ("[T]he Court in *Bell Atlantic* made clear that it did not, in fact, supplant the basic notice-pleading standard."); *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923-24 (7th Cir. 2007) ("Facts that substantiate the claim ultimately must be put into evidence, but the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.'").  What matters here is whether Novelty has been given "fair notice of what the claim is and the grounds upon which it rests," and that, through the allegations, the defendants have shown "that it is plausible, rather than merely speculative," that they are entitled to relief.  *Tamayo*, 526 F.3d at 1083.  Novelty's motion does not provide any basis, in the allegations or any applicable legal standard, for a finding that Mountain View has inadequately alleged the objectively baseless nature of Novelty's claims.

The closest Novelty comes to making any cogent argument about the issue is its assertion – citing an order from the Eastern District of Texas – that so long as it has stated one valid claim, it is immunized from liability for its numerous baseless claims.  Specifically, Novelty cites *RPC, Inc. v. Prudhomme*, 6:06cv152, 2007 U.S. Dist. LEXIS 3946, at *10-11 (E.D. Tex. Jan. 19, 2007), in which the District Court concluded that none of the plaintiff's theories was objectively baseless.  Then, in *dicta* and without citation to authority, the court there stated, "Even if said claim was wholly without merit, which it is not, this would not be sufficient to render the entire litigation baseless."  *Id.* at *12.  The problem with Novelty's reliance on *RPC* is that it incorrectly states the test for immunity under *Noerr-Pennington* – especially in this Circuit.

14

As explained by the Seventh Circuit a single claim may constitute "sham litigation" actionable under the antitrust laws. *MCI Comms. Corp. v. AT&T Co.*, 708 F.2d 1081, 1154 (7th Cir. 1983) ("A close reading of the plurality and dissent in [*Vendo Co.*] *v. Lektro-Vend* [*Corp.*, 433 U.S. 623 (1977)] suggests that a majority of the Court believes that a *single* claim, lawsuit or petition can be 'sham litigation' actionable under the antitrust laws.") (emphasis in original); *see also* 10-77 Federal Antitrust Law § 77.4, *supra*. From a practical standpoint, this only makes sense. There is no logical reason why numerous, objectively baseless claims should be immunized if presented alongside a single claim that might have merit, but otherwise punishable if they had been presented in a free-standing complaint. Novelty's contention that it is immune from suit for asserting more than 200 baseless claims, simply because *one* of its other claims might not be objectively unreasonable, should be rejected.

> **B.    The Counterclaims Allege Facts Making It Clear That Novelty's Baseless Claims Were Intended To Injure Its Competitor, Mountain View, Through The Use Of Governmental Process.**

As the counterclaims set forth, at the same time Novelty was inflating its claims,

> Novelty initiated discussions with Mountain View's parent company, McLane Company, Inc., regarding Novelty's interest in purchasing Mountain View. In the course of those discussions, Novelty's president Todd Green stated his position that Novelty's litigation was worth millions of dollars, and would cost McLane and Mountain View significant amounts to defend. Green stated that McLane should sell Mountain View to Novelty at a steep discount and, in exchange, Novelty would drop its claims in the lawsuit.

(MVM Counterclaim at ¶¶ 91-94). Thus, Novelty has used its baseless claims as a weapon in an attempt to eliminate its competitor, Mountain View. In addition, Novelty has used its baseless claims as a means to gain access to the defendants' confidential, proprietary information regarding their businesses – including through the issuance of subpoenas without notice, in violation of Federal Rule of Civil Procedure 45, and then violating the Court's Order aimed at

remediating the harm from its first violation.  (*Id.* at ¶¶ 21-45, 89).  And, Novelty has used its baseless claims for the purpose of imposing high costs of defense rather than obtaining a judgment on the merits.  (*Id.* at ¶ 86).

Without citation to any authority, Novelty declares these anticompetitive purposes insufficient to "satisfy the subjective motivation requirement for the sham exception to the Noerr doctrine."  Mot. at 7.  This assertion is incredible given that Seventh Circuit cases, directly on point, have held that they are.  *See Bolingbrook v. Citizens Util. Co.*, 864 F.2d 481, 483 (7th Cir. 1988) ("Since 1977 many courts, including this one, have recognized that a single suit may be a 'sham', and therefore a substantive violation of the antitrust laws, when it is pursued in order to impose high costs of defending rather than in order to obtain relief."); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 264 (7th Cir. 1984) (allegations that plaintiff's "interest was not in obtaining a judgment, but eliminating a competitor" are sufficient to state a sham litigation claim).  Therefore, Novelty's motion to dismiss on this basis should be denied.

C.    *Noerr* **Does Not Immunize Novelty Against The Defendants'**
      **Common Law Counterclaims.**

Novelty contends that *Noerr* immunity also bars both defendants' Indiana common law counterclaims.  The only Seventh Circuit case Novelty cites for the proposition does not actually stand for that proposition at all.  In *Havoco of America, Ltd. v. Hollowbow*, 702 F.2d 643, 644 (7th Cir. 1983), the Seventh Circuit adopted in whole the judgment of the District Court for the Northern District of Illinois.  There, the District Court ruled that Illinois law provided immunity from a claim for tortious interference with business opportunity that was based in the filing of a lawsuit.  *Id.* at 677.  But, the District Court expressly <u>declined</u> to rule on the question of whether First Amendment immunity (*Noerr* immunity) applied to Illinois state law claims.  *Id.* at 647 n.4 ("Because the court holds that defendants' filing of the lawsuit is privileged under Illinois law <u>it</u>

<u>need not and does not determine</u> under what circumstances such activity is also privileged under the First Amendment.") (emphasis added). In fact, 15 years after *Havoco*, a different judge in the Northern District of Illinois concluded that neither *Noerr* nor *Havoco* applied to extend immunity to an Illinois state law claim for malicious prosecution. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, No. 92 C 7768, 1998 U.S. Dist. LEXIS 18122, at *7-8 (N.D. Ill. Nov. 17, 1998).

The most important point here is that "sham litigation" for purposes of evaluating immunity from an antitrust claim does not transplant precisely into an analysis of claims for common law abuse of process. "Sham litigation," for antitrust purposes, is akin to the tort of malicious prosecution – *i.e.*, both require a claim brought without probable cause. Abuse of process, though, "does <u>not</u> require proving that the lawsuit was brought without probable cause." *Grip-Pak, Inc. v. Ill. Tool Works, Inc.*, 694 F.2d 466, 471 (7th Cir. 1982) (emphasis added). For this reason, the Court in *Grip-Pak* expressly rejected the notion that *Noerr* immunity applied to abuse of process claims. *Id.* ("If all nonmalicious litigation were immunized from government regulation by the First Amendment, the tort of abuse of process would be unconstitutional – something that, so far as we know, no one believes."). Moreover, the test for "sham litigation" set forth by *PREI* in the antitrust context necessarily applies only when litigation is directed at a competitor. In Indiana, abuse of process claims may be pursued without regard for the nature of the relationship between plaintiff and defendant. Finally, even if *Noerr* immunity applied in theory to Indiana common law claims of abuse of process and unfair competition, the claims here are based on the same illegal conduct that strips Novelty of such immunity for antitrust purposes. For these reasons, Novelty's motion to dismiss the defendants' common law claims on this basis should be denied.

**II.      Mountain View Has Adequately Pleaded Its Claims For Monopolization And Attempted Monopolization.**

The theme of Novelty's motion to dismiss Mountain View's Sherman Act Section 2 claims is this:  "Mountain View has not shown _____."  This argument, that Mountain View has not <u>proven</u> something in its pleading, is the same problem that undermines Novelty's argument for *Noerr* immunity.  Again, the question is not whether Mountain View has yet proven its Section 2 claims, but whether Mountain View has (1) given Novelty fair notice of the claims, and (2) stated a plausible claim for relief.  As explained in several Seventh Circuit opinions, "Any district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think:  What rule of law requires a complaint to contain that allegation?"  *Vincent*, 485 F.3d at 924 (quoting *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005)).  The Seventh Circuit has consistently reaffirmed that these principles apply even after *Bell Atlantic*.  *See Tamayo*, 526 F.3d at 1083; *see also Norman-Nunnery v. Madison Area Tech. College*, 08-cv-320-bbc, 2008 U.S. Dist. LEXIS 72971, at *8 (W.D. Wis. Sept. 23, 2008) ("'Plausibility' is not code for pleading with particularity.").

Consistent with its theme, Novelty's motion to dismiss the antitrust claims is a recitation of its potential defenses, and an argument that Mountain View's allegations have not accounted for them.  But an antitrust complaint "need not anticipate or attempt to defuse potential defenses. A complaint states a claim on which relief may be granted when it narrates an intelligible grievance that, if proved, shows a legal entitlement to relief."  *U.S. Gypsum Co.*, 350 F.3d at 626.

As set forth below, Mountain View's Sherman Act monopolization counterclaim sets forth sufficient facts giving rise to a reasonable inference (if not more) that: (1) Novelty has monopoly power in the relevant market, and (2) Novelty has willfully maintained that power as distinguished from growth or development as a consequence of a superior product, business

acumen, or historic accident.  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).

And, Mountain View's "attempted monopolization" counterclaim sets forth sufficient facts

giving rise to a reasonable inference that:  (1) Novelty has engaged in predatory or

anticompetitive conduct; (2) with a specific intent to monopolize; and (3) there is a dangerous

probability that Novelty would achieve monopoly power as a result.  *Spectrum Sports v.

McQuillan*, 506 U.S. 447, 456 (1993).[5]

**A.      Mountain View Has Adequately Pleaded A Claim Of Monopolization.**

**1.      The Counterclaims Adequately Define The Relevant Market.**

First, Mountain View's counterclaims have both defined and explained the relevant

market at issue here:

> Mountain View and Novelty are competitors in the market for full-service
> distribution of novelty products to convenience stores in the United States ("the
> Market").  . . .  Full-service distributors of novelty products in the Market provide
> not only goods but also specialized services to their convenience store customers.
> Such distributors obtain novelty products directly from manufacturers (who often
> are overseas), design the packaging and displays for those products, then sell
> those novelty products to their convenience store customers who, in turn, sell the
> products to their customers.  . . .  Full-service distributors of novelty products in
> the Market deliver novelty products directly to their customers on a regular basis,
> and utilize a network of on-site merchandisers to replace products that have not
> sold with new ones that hopefully will.  Such distributors credit their customers
> for the products that are removed, then resell or liquidate those removed products.

(MVM Counterclaims at ¶¶ 1, 4, 5).  Through these allegations, Mountain View has identified

both a product and a geographic dimension to the Market.  Those are the only two dimensions to

a "relevant market."  *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 738 (7th Cir.

2004).  In addition, Mountain View's counterclaims set forth specific barriers to entry in the

Market.  (MVM Counterclaims at ¶¶ 6-11).

---

[5] As this Court has noted, attempted monopolization is a "lesser included" allegation of a monopolization claim in
that the plaintiff need not prove the existence of monopoly power but a dangerous probability the defendant will
obtain that power through its illegal conduct.  *Wasson v. Peabody Coal Co.*, NA 02-90-C-B/H, 2003 U.S. Dist.
LEXIS 3621, at *11 n.4 (S.D. Ind. Jan. 9, 2003).

Novelty cites no authority for the proposition that Mountain View's definition of the relevant Market is deficient for pleading purposes.  Instead, Novelty – which has repeatedly and boastfully described itself at "one of the largest distributors of products to convenience stores in the United States," distributing "many novelty type items found for sale in convenience stores," Second Am. Compl. at ¶ 9 – now disingenuously claims not to know what a "convenience store" or a "novelty product" is.  *See* Mot. at 11-12.  In any event, "[m]arket definition . . . involves a deeply fact-intensive inquiry, and for this reason a court must be hesitant to grant a motion to dismiss for failure to plead a relevant market." *JamSports & Entm't, LLC v. Paradama Prods.*, Case No. 02 C 2298, 2003 U.S. Dist. LEXIS 6100, at *17-18 (N.D. Ill. April 21, 2003) (citations omitted); *see also MCM Partners v. Andrews-Bartlett & Assocs.*, 62 F.3d 967, 976 (7th Cir. 1995); *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 782 (7th Cir. 1994).  At the very least, at this stage in the proceedings, Mountain View has given Novelty fair notice of what it proposes the relevant market to be, and stated facts demonstrating a plausibility that such a relevant market exists.  Thus, Novelty's motion to dismiss on this basis should be denied.

> **2.     The Counterclaims Adequately Allege That Novelty Possesses Monopoly Power In The Relevant Market.**

There are two ways to ultimately prove monopoly power in a market:  (1) direct evidence showing the exercise of actual control over prices or the actual exclusion of competitors; or (2) circumstantial evidence of monopoly power by showing a high market share within a defined market.  *Grinnell*, 384 U.S. at 570-71.  Mountain View's monopolization counterclaim has alleged facts demonstrating circumstantial evidence of monopoly power.  At present, those facts include:

- Novelty is one of the largest full-service distributors of novelty products in the United States.  (MVM Counterclaim at ¶ 2).

- Novelty generates annual sales revenue in excess of $120 million.  (*Id.* at ¶ 2).

- Novelty services over 10,000 convenience stores in the market.  (*Id.*).

- Novelty's market share has steadily and significantly increased since its inception in 1980.  (*Id.*).

- The market in which Novelty competes contains several barriers to entry that make it difficult for would-be participants to sustain operations.  (*Id.* at ¶ 6).

- Because novelty products are frequently obtained most cheaply through overseas vendors, participants in the market must develop reliable sources of goods and find cost effective means of importing those goods to the United States.  (*Id.* at ¶ 7).

- Participants in the market must also develop a nationwide distribution network through which new goods are delivered directly to the customer and unsold goods are removed, on a frequent basis, by on-site merchandisers.  (*Id.* at ¶ 8).

- There are a limited number of convenience store customers in the United States that both have retail space and that also use a portion of that space for the sale of novelty products.  (*Id.* at ¶ 9).

- Customer relationships among those in the market are stable and do not change frequently.  (*Id.* at ¶ 10).

- Only a few novelty product distributors are able to provide the full range of services required to participate in the market.  (*Id.* at ¶ 11).

Moreover, as set forth in Part I above, Novelty has adopted a course of anticompetitive, sham litigation as a means to exclude competition from the relevant market.  *Ind. Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1414 (7th Cir. 1989) ("Monopoly power has long been defined in the courts as the power to exclude competition or to control price.").  The very fact that Novelty believes – and has set out to prove – it is capable of excluding competition in such a manner raises a reasonable inference that Novelty indeed has such power.  3B Philip Areeda & Herbert Hovenkamp, Antitrust Law, ¶ 805 at 408 (3d ed. 2008) ("Significantly, §2 claims appropriately arise only in markets that are relatively concentrated, having a small number of

effective competitors.  In such markets a firm generally knows who its rivals are, and a rational firm takes care to estimate the impact of its own decisions on these other firms.").

Novelty's argument is that Mountain View does not have sufficient evidence, today, to *prove* Novelty's specific market share and, thus, Novelty's monopoly power.  Even if that were accurate, that is not the counterclaimant's burden at the pleading stage.  Indeed, this Court has seen and rejected such an argument before.  In *Wasson v. Peabody Coal*, No. 02-90-C-B/H, 2003 U.S. Dist. LEXIS 3621 (S.D. Ind. July 19, 2007), the defendant moved to dismiss a monopolization claim on the basis that the Complaint did not recite "a specific percentage" of the relevant market belonging to the defendant.  This Court rejected that argument, noting that "such specific allegations are not required at this stage of litigation."  *Id.* at *10 (citing *Hammes*, 33 F.3d at 782).

Based on the information currently available,[6] the counterclaims set forth that:  Novelty is the leading full-service distributor of novelty products, a company whose market share is at least three times Mountain View's, a company that operates in a concentrated relevant market with significant barriers to entry, and a company that believes it is capable of excluding competitors such as Mountain View from the relevant market.  This is sufficient to raise a reasonable inference that Novelty possesses monopoly power.

---

[6] Novelty is a privately held company in a relevant market whose participants are privately held companies.  That no specific market share data is available at the pleading stage should not doom plaintiffs operating in such a market from ever asserting monopolization claims.  *Cf. Norman-Nunnery*, 08-cv-320-bbc, 2008 U.S. Dist. LEXIS 72971, at *9 ("As the [Seventh Circuit] has explained many times, the detailed facts defendants demand may be fleshed out in discovery.  Obviously, if plaintiff is unable to prove at summary judgment or at trial that defendants knew she was an African American, her claim will fail.  However, she has met the minimum requirements of Fed. R. Civ. P. 8.  If defendants' view of pleading standards prevailed, it would be virtually impossible for any applicant without inside knowledge of the defendants' decision making process to survive a motion to dismiss.  That goes far beyond what the Court held or intended in *Bell Atlantic*.").

3.    **The Counterclaims Sufficiently Allege That Novelty, Through Its Anticompetitive Sham Litigation, Is Willfully Maintaining Monopoly Power.**

Finally, as set forth in Part I above, Mountain View's counterclaims allege numerous facts giving rise to a reasonable inference that Novelty has engaged in sham litigation against its competitor. These facts also supply the predicate for a case that Novelty is willfully maintaining its monopoly power and that Mountain View has sustained an antitrust injury.

As explained in *Endsley v. City of Chicago*, 230 F.3d 276, 283 (7th Cir. 2000), "The mere existence of the power to control prices or exclude competition is not unlawful unless it is coupled with intent. By intent, we do not mean intent to obtain a monopoly or to capture an ongoing increase in market share. . . . Under § 2, intent to obtain a monopoly is unlawful only where an entity seeks to maintain or achieve monopoly power by anti-competitive means." In the case of sham litigation, "the monopolist burdening a rival with a bad faith suit clearly commits an exclusionary act." 3 Areeda & Hovenkamp, Antitrust Law, ¶ 706 at 262 (3d ed. 2008).

Similarly, Novelty's use of sham litigation in an effort to eliminate Mountain View as a competitor and impose high defense costs without regard for the merits of its claims gives rise to the antitrust injury needed to sustain a Section 2 claim. *Bolingbrook*, 864 F.2d at 483 ("Since 1977 many courts, including this one, have recognized that a single suit may be a 'sham', and therefore a substantive violation of the antitrust laws, when it is pursued in order to impose high costs of defending rather than in order to obtain relief."); *Premier Electrical Constr. Co. v. Nat'l Electrical Contractors Ass'n, Inc.*, 814 F.2d 358, 376 (7th Cir. 1987) ("If the injury flows directly from the 'petitioning' – if the injury occurs no matter how the government responds to the request for aid – then we have an antitrust case. When private parties help themselves to a reduction in competition, the antitrust laws apply."); *Dairy Foods, Inc. v. Dairy Maid Prods.*

*Coop.*, 297 F.2d 805, 809 (7th Cir. 1961) ("Where an infringement suit is brought as part of and in furtherance of a combination and conspiracy which violates the antitrust laws and results in injury such as is here alleged the person may recover threefold the damages he sustains."). Indeed, if the commencement of "sham litigation" against a competitor did not give rise to an antitrust injury, the Supreme Court wasted a great deal of time in *PREI* explaining how sham litigation is an exception to *Noerr* antitrust immunity.  Thus, Novelty's motion to dismiss on the basis that Mountain View has not sufficiently alleged that Novelty is willfully maintaining monopoly power through an anticompetitive act, or that Mountain View has not sustained an "antitrust injury," should be denied.

### B.   Mountain View Has Adequately Pleaded A Claim Of Attempted Monopolization.

To prevail on a Section 2 claim of attempted monopolization, a plaintiff must prove that: (1) the defendant has engaged in predatory or anticompetitive conduct; (2) with a specific intent to monopolize; and (3) there is a dangerous probability of achieving monopoly power.  *Spectrum Sports*, 506 U.S. at 456.  Thus, for a claim of attempted monopolization, a plaintiff must still plead a relevant market (addressed in Part II.A.1. above) and anticompetitive conduct (addressed in Parts I and II.A.3 above).  The plaintiff must also plead facts giving rise to a reasonable inference that the defendant had a specific intent to monopolize; however, the requisite specific intent "may be inferred from predatory conduct which is broadly defined as 'conduct that is in itself an independent violation of the antitrust laws or that has no legitimate business justification other than to destroy or damage competition.'"  *Bi-Rite Oil Co. v. Ind. Farm Bureau Coop. Assoc.*, 720 F. Supp. 1363, 1377 (S.D. Ind. 1989) (quoting *Great Escape, Inc. v. Union City Body Co., Inc.*, 791 F.2d 532, 541 (7th Cir. 1986)).  Here, the allegations state a plausible claim that Novelty has engaged in predatory conduct that has no legitimate business justification other

than to destroy or damage competition.  *See* 3B Areeda & Hovenkamp, Antitrust Law, ¶ 805 at 408 ("The conventional notion of specific intent is the intention to prevail by improper means."); *id.* at 410 ("The 'objective intent', manifested by the use of prohibited means should be sufficient to satisfy the intent component of attempt to monopolize.").[7]

The key difference between an attempted monopolization claim and Mountain View's monopolization claim – a difference not discussed in Novelty's motion – is this:  while a monopolization plaintiff must eventually prove that the defendant possesses monopoly power, the attempted monopolization plaintiff must prove only a "dangerous probability" that the defendant would obtain monopoly power through its misconduct.  *DSM Desotech, Inc. v. 3D Systems Corp.*, No. 08 CV 1531, 2009 U.S. Dist. LEXIS 5980, at *21-22 (N.D. Ill. Jan. 26, 2009) ("[A] plaintiff need only show that [the defendant] currently has *market* power and that such *market* power will tend to approach monopoly power if the alleged unlawful conduct remains unchecked."); *Wasson*, NA 02-90-C-B/H, 2003 U.S. Dist. LEXIS 3621, at *11 n.4.

In other words, courts reviewing attempted monopolization claims look not only at allegations pertinent to market share, but also other facts, such as a rise in the defendant's market share, and the relation of the alleged misconduct to the ability to acquire an additional share of the market.  *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579, 598 (7th Cir. 1971) ("[The evaluation of the claim] requires an appraisal of the alleged offender's ability to achieve the forbidden result, his intent, and the nature of his overt actions.  In an antitrust context we must consider the firm's capacity to commit the offense, the scope of its objective, and the character of its conduct."); *see also* 3B Areeda & Hovenkamp, Antitrust Law, ¶ 807 at 443 ("By contrast, monopoly created by improperly brought infringement suits might be more plausible on

---

[7] Novelty's motion to dismiss, perhaps by oversight, does not specifically argue that Mountain View's attempted monopolization claim fails to allege Novelty's specific intent.  Anticipating the addition of such an argument on reply, the defendants thought it prudent to address it now.

smaller initial shares, as would monopoly created by merger. . . . And a moderate but rising share may pose a more 'dangerous probability' than would a higher but falling share.").

Of course, all of this goes to what must ultimately be proven at trial, not what must be pleaded in Mountain View's attempted monopolization counterclaim.  As this Court noted in *Indiana Grocery Co. v. Super Valu Stores, Inc.*, there is a difference:

> Though both sides urge the court to consider various factors in deciding whether a dangerous probability of success exists, the court concludes that it need not, in the context of this motion [to dismiss], conduct such an examination and analysis. The court's inquiry is more properly focused upon what [the plaintiff] has pleaded, and not upon what it must prove . . . .

647 F. Supp. 254, 258 (S.D. Ind. 1986).  In *Indiana Grocery*, the attempted monopolization plaintiff alleged that the defendants had market power and significant financial resources, evidenced an intention to monopolize the relevant market, and were engaging in predatory conduct.  *Id.*  The complaint also alleged facts concerning the defendants' annual sales and increasing market share.  *Id.*  In that case, this Court concluded that the plaintiff had stated sufficient factual detail to withstand a motion to dismiss the attempted monopolization claim.  *Id.*

Here, Mountain View's counterclaim has provided significant factual information regarding Novelty's leading position in a concentrated market – in terms of customers, annual sales, and significantly increasing market share over time.  (MVM Counterclaim at ¶ 2, 11).  The counterclaim also sets forth the significant barriers to entry in the relevant market that would increase the probability of achieving monopoly power if Novelty were successful in its misconduct.  (*Id.* at ¶¶ 6-10).  The counterclaim also sets forth in great detail the egregious anticompetitive conduct at issue:  objectively baseless claims brought for the purpose of imposing high defense costs and eliminating a competitor.  Considering all of these allegations, Mountain View has stated facts giving rise to a reasonable inference that Novelty has attempted

to monopolize the market.  Thus, even if the Court concluded that Mountain View's counterclaim did not sufficiently allege "monopoly power," the Court could – and should – still conclude that the counterclaim sufficiently alleges a "dangerous probability" of obtaining that power through Novelty's misconduct.

Finally, it should be noted that the fact Novelty failed to eliminate Mountain View through this litigation does not immunize Novelty from liability for making the attempt.  *See Kearney & Trecker Corp.*, 452 F.2d at 598 ("By condemning attempts to monopolize, [Section 2 of the Sherman Act] directs itself against dangerous probabilities as well as the completed result.").  Areeda & Hovenkamp explain further,

> Consider, for example, a firm with a 50 percent market share that files baseless patent infringement claims against small rivals in order to deter their growth and encourage their exit from the market.  But suppose that at least one of these lawsuits fails and the infringement defendant in that lawsuit not only prevails in the suit itself but acquires a significant market position preventing the dominant firm from attaining any monopoly.  In such a case the "dangerous probability" question looks at the prospect of such a suit at the time it is brought, not at the eventual outcome.  Otherwise, the firm will file the suit, knowing that victory will bring the monopoly while failure will produce no antitrust penalty.

3B Areeda & Hovenkamp, Antitrust Law, ¶ 807 at 457-58.  For all of these reasons, Novelty's motion to dismiss Mountain View's attempted monopolization claim should be denied.

## III.   The Defendants Have Adequately Pleaded Their Claims For Abuse Of Process.

Novelty's motion to dismiss the defendants' counterclaims for abuse of process is, again, simply a disagreement with the defendants' characterization of events and an argument that its conduct was somehow proper.  Again, such argument is not a basis for dismissing a complaint.

The issue here is whether the defendants have alleged facts giving rise to a reasonable inference that Novelty had "an ulterior purpose, and second, [committed] a wilful act in the use of the process not proper in the regular conduct of the proceeding."  *Groen v. Elkins*, 551 N.E.2d

876, 878 (Ind. Ct. App. 1990) (quoting Prosser & Keeton, *The Law of Torts*, 898 (5th ed. 1984)).

"Process," for purposes of the tort, should be "'broadly interpreted to encompass the entire range

of 'procedures' incident to litigation . . . . This broad reach of the 'abuse of process' tort can be

explained historically, since the tort evolved as a 'catch-all' category to cover improper uses of

the judicial machinery . . . .'" *Id.* at 878 n.3 (quoting *Barquis v. Merchants Collection Ass'n of

Oakland*, 496 P.2d 817, 824 (Cal. 1972)).

As the Indiana Supreme Court has explained, "The gravamen of [abuse of process] is not

the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated

process to illegitimate ends." *Nat'l City Bank v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997)

(quoting *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994)).  Similarly, in *In re TCI, Ltd.*, the

Seventh Circuit explained,

> A lawyer who pursues a plausible claim because of the costs the suit will impose
> on the other side, instead of the potential recovery on the claim, is engaged in
> abuse of process.  This is independently tortious, and it may be the basis of
> substantive liability under tort (or antitrust) laws as well as the basis for an award
> of fees.  Even those who prevail may be liable for fees if in bad faith they cause
> their adversaries to bear excessive costs.  This theme also appears in cases
> emphasizing that dogged pursuit of a colorable claim becomes actionable bad
> faith once the attorney learns (or should have learned) that the claim is bound to
> fail.

769 F.2d 441, 445 (7th Cir. 1985).  Against this legal framework, the defendants have stated

allegations sufficient to carry their pleading burden for an abuse of process claim.

As set forth above and in the counterclaims, Novelty has raised spurious claims against

the defendants, defied the requirements of the United States Code, the Federal Rules of Civil

Procedure, and the Orders of this Court addressing discovery.  All of this, Novelty has done

without regard for whether its claims were valid, but rather with the full intention of inflicting

significant defense costs on the defendants and leveraging those costs to acquire Mountain View

from McLane.[8]  This is the definition of abuse of process, and Novelty's motion to dismiss does nothing to explain how these allegations do not adequately plead the claim.  For these reasons, Novelty's motion to dismiss the defendants' abuse of process counterclaims should be denied.

## IV.    Mountain View Has Adequately Pleaded Its Claim For Unfair Competition.

Once again, the basis of Novelty's motion to dismiss Mountain View's common law unfair competition claim is Novelty's argument that its conduct has been proper.  Once again, that is no basis for dismissing the claim.  Novelty is correct that, traditionally, the tort of unfair competition in Indiana has been used to state claims for passing off.  *Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 820 (Ind. 2006).  But, the Indiana Supreme Court has expressly stated that it does "not agree that unfair competition is limited to passing off."  *Id.*

For its claim of unfair competition, Mountain View relies upon the Restatement (Third) of Unfair Competition's explanation of the tort:

> One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless:
>
> . . . .
>
> **(b) the acts or practices of the actor are actionable by the other under federal or state statutes, international agreements, or general principles of common law apart from those considered in this Restatement.**

Restatement (Third) of Unfair Competition § 1 (1995) (emphasis added).

---

[8] Without any legal support for the proposition, Novelty contends in its brief that it may escape liability for its attempt to acquire Mountain View through unlawful, extortionate means because such evidence would be excluded at trial as an "offer of compromise" under Evidence Rule 408.  That is incorrect.  *See* Evid. R. 408(a) (the only prohibited uses of offers to compromise are to "prove liability for, invalidity of, or amount of a claim" or "to impeach through a prior inconsistent statement"); *id.* 408(b) ("This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a)").  Such evidence would not be used for the purpose of proving or disproving Novelty's underlying claims, but to establish Novelty's ulterior, anticompetitive purpose for its litigation conduct – an element of the defendants' claims against Novelty, not Novelty's claims against the defendants.  *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293 (6th Cir. 1997) ("The inapplicability of Rule 408 to suits seeking to vindicate wrongs committed during settlement discussions derives from the more general principle that 'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.'") (quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure:  Evidence § 5314 at n.25 (1st ed. 1980)).

Comment g to this Restatement section explains,

> As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition.  A competitor who interferes with the business of another . . . by instituting or threatening to institute groundless litigation against a competitor [commits the tort of unfair competition].

*Id.* at § 1 cmt. g.  And, as the Indiana Supreme Court's opinion in *Keaton* demonstrates, Indiana is relying upon the formulations in the Restatement (Third) of Unfair Competition to develop its caselaw regarding the tort.  *Keaton*, 842 N.E.2d at 819-21 (applying Sections 9-14 of the Restatement).  Given the Indiana Supreme Court's willingness to turn to the Restatement, it is reasonable to assume that the Court would rely upon Section 1, which states the "General Principles" of unfair competition.

Against that backdrop, and as set forth above, Mountain View has pleaded facts sufficient to allege that Novelty has engaged in "acts or practices . . . [that] are actionable . . . under federal or state statutes . . . or general principles of common law" apart from those considered in the Restatement (Third) of Unfair Competition.  Restatement (Third) of Unfair Competition § 1(b).  Specifically, as set forth in comment g to Section 1, Mountain View has alleged that Novelty instituted and maintained groundless litigation against it.[9]  This satisfies the pleading requirements for the tort of unfair competition.  Novelty's motion to dismiss this claim should be denied.

---

[9] Novelty cites *Prudent Pub. Co. Inc. v. Myron Mfg. Corp.*, 722 F. Supp. 17 (S.D.N.Y. 1989), in support of its motion to dismiss this claim.  But, as even Novelty acknowledges, a basis for the dismissal of that unfair competition claim was the lack of an allegation that the defendant "knew claims were without merit before it commenced [the] lawsuit."  Mot. at 23.  Here, Mountain View has stated numerous allegations demonstrating Novelty's assertion of claims despite Novelty's knowledge they were without merit.

**V.      The Court Has Supplemental Jurisdiction Over The Defendants' Common Law Counterclaims.**

Finally, in a single paragraph – and without citation to authority – Novelty asserts that the Court does not have jurisdiction over the defendants' common law counterclaims.  *See* Mot. at 16.  Novelty's conclusion, unaccompanied by cogent argument, is incorrect and contrary to Seventh Circuit precedent that jurisdiction is appropriate.

Here, the defendants' claims are "after-acquired" counterclaims brought pursuant to Federal Rule of Civil Procedure 13(e).  (*See* DE # 125, Order Granting Parties' Motions To Amend).  Nevertheless, they still arise out of the same "transaction" as Novelty's claims – *i.e.*, they have a "logical relationship" to the claims asserted by Novelty.  As the Seventh Circuit explained in *Warshawsky & Co. v. Arcata Nat'l Corp.*,

> Courts generally have agreed that the words "transaction or occurrence" should be interpreted liberally in order to further the general policies of the federal rules . . . .  As a word of flexible meaning, "transaction" may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.  Thus, the term "transaction" is to be construed generously to avoid the unnecessary expense inherent in multiplicity of litigation.

552 F.2d 1257, 1261 (7th Cir. 1977).  "There is no formulaic test to determine whether suits are logically related.  A court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective backgrounds." *Burlington N. R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990).  "The pertinent inquiry is whether the claim arises out of the same transaction or occurrence and not whether the claims are *from* the same transaction or occurrence." *Price v. United States*, 42 F.3d 1068, 1073 (7th Cir. 1994) (emphasis added).

Each of the claims in this case – by Novelty and the defendants – have their origins in the purchase and sale of certain novelty products, in Novelty's asserted ownership of intellectual

property rights in those products, and in the bases *vel non* for Novelty's claims.  The witnesses

for all claims overlap.  The evidence for all claims overlap.  The legal underpinnings for all

claims overlap.  Thus, the claims all arise out of the "same transaction or occurrence."  The

issue, then, is what that means for jurisdictional purposes.

The particular situation here – where a plaintiff argued there was no jurisdiction over

logically related, but after-acquired, counterclaims – was squarely addressed by the Seventh

Circuit in *Harbor Insurance Company v. Continental Bank Corporation*, 922 F.2d 357 (7th Cir.

1990).  In *Harbor Insurance*, the Seventh Circuit rejected the plaintiff's motion to dismiss the

counterclaim on jurisdictional grounds, and held that "a Rule 13(e) counterclaim that arises out

of the same transaction or occurrence as the complaint is within the ancillary jurisdiction of the

federal courts."  *Id.* at 361.  *See also* Wright, Miller & Kane, Federal Practice & Procedure: Civil

2d § 1429 at 212 (2d ed. 1990).

What the court referred to as "ancillary jurisdiction" in *Harbor Insurance* is now codified

at 28 U.S.C. § 1367(a), which states in relevant part that "district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within [the court's]

original jurisdiction that they form part of the same case or controversy under Article III of the

Untied States Constitution."  *See Hansen v. Bd. of Trs. of Hamilton Southeastern Sch. Corp.*, 551

F.3d 599, 607 (7th Cir. 2008) ("Congress enacted § 1367 to codify long-standing principles of

pendent and ancillary jurisdiction, whereby federal courts may exercise supplemental jurisdiction

over a state claim if the state and federal claims derive from a common nucleus of operative

fact.") (citation and internal quotations omitted).  Under 28 U.S.C. § 1367, supplemental

jurisdiction is appropriate over the defendants' state law counterclaims.  *Harbor Ins.*, 922 F.2d at

361; *Skaro v. E. Savings Bank*, 866 F. Supp. 229, 233-34 (W.D. Pa. 1994).[10]  Novelty's motion

presents no argument why this is not so.  Therefore, Novelty's motion to dismiss on this basis

should be denied.

## CONCLUSION

In sum, Novelty's motion fails to carry its burden of demonstrating a basis for dismissing

any of the counterclaims asserted by Mountain View and McLane.  Novelty's motion should be

denied, and this case moved toward a resolution on the merits.

Respectfully submitted,

/s/ *Michael R. Limrick*
James M. Hinshaw
Michael R. Limrick
Margaret M. Christensen
BINGHAM MCHALE LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN  46204-4900
(317) 635-8900
*Attorneys for Defendants*

---

[10] 28 U.S.C. § 1367(c) states that a district court may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  None of these factors applies to these ordinary common law claims for abuse of process and unfair competition, which simply flow from the Novelty conduct already at issue.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 19, 2009, a true and correct copy of the above and foregoing document was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

    Kevin M. Boyle
    Paul B. Overhauser
    Eric Lamb
    Overhauser Law Office
    737 W. Green Meadows Drive
    Suite 300
    Greenfield, IN  46140
    kboyle@overhauser.com
    poverhauser@overhauser.com
    elamb@overhauser.com


                                        s/ *Michael R. Limrick*
                                        An Attorney for Defendants