UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NOVELTY, INC. | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:07-cv-01229-SEB-JMS |
| | ) | |
| MOUNTAIN VIEW MARKETING, INC. and | ) | |
| MCLANE COMPANY, INC. | ) | |
|     *Defendants*. | ) | |

## ORDER

Presently before the Court is Defendants' Emergency Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 and This Court's Inherent Authority (the "Motion for Sanctions"). [Dkt. 165.][1]

### BACKGROUND

In November 2007, Novelty filed a Complaint against its competitor, Defendant Mountain View Marketing, Inc., and that company's parent, McLane Company, Inc. (collectively referred to as "Mountain View" unless otherwise noted). [Dkt. 1.] Novelty alleged that Mountain View was selling knock offs of three Novelty product designs that infringed upon Novelty's copyright and trade dress. [*See id.* ¶11.]

By the time that Novelty filed its First Amended Complaint in October 2008, the number of designs at issue had increased to twenty-one. [Dkt. 96-2.] Later, in April 2009, Novelty filed

---

[1] We note that Plaintiff Novelty, Inc. ("Novelty") has requested [Dkt. 180] twenty minutes of oral argument on the Motion for Sanctions. For reasons explained below, the magistrate judge will convene an evidentiary hearing concerning the adequacy and timeliness of Novelty's responses to Defendants' various requests for production of documents, during which Novelty can present its arguments on those matters. All other issues raised in the Motion for Sanctions have been thoroughly presented through the briefs and affidavits, and oral argument on them is not necessary. Thus, we **GRANT IN PART** and **DENY IN PART** Novelty's request for oral argument on the Motion for Sanctions.

its Second Amended Complaint, which dropped from its claims ten of those designs, leaving eleven at issue.  [Dkt. 128.]

Concurrently with the filing of that Second Amended Complaint, Mountain View was granted leave to assert counterclaims for abuse of process, unfair competition, and Sherman Act claims against Novelty.  [Dkt. 125.]  Mountain View alleged that this entire litigation is baseless and harassing, especially with respect to those designs that Novelty initially brought into this litigation in the First Amended Complaint but dropped as part of the Second Amended Complaint.

As the magistrate judge has correctly noted, this case—almost from the very beginning—has been "riddled with discovery disputes."  [Dkt. 125 at 2.]  In the month of February 2008 alone, the parties filed three separate discovery motions.  [Dkt. 38, 42, 51.][2]

The parties' most recent dispute involves failures by Novelty to timely and completely satisfy its obligations in response to several discovery requests and two discovery orders.  The first discovery order was issued July 1, 2009.  [Dkt. 155.]  The second, on July 23, 2009, summarized proceedings at a hearing held the previous day.  [Dkt. 177.]  Together, those orders established due dates for Novelty's comprehensive responses to Mountain View's First Request

---

[2] Although not technically a discovery motion, we note that Mountain View also filed an Emergency Motion for a Writ of Prohibition, [Dkt. 41], seeking to prevent Novelty from carrying out its stated intention to file an action in Indiana state court to obtain certain documents that Mountain View had objected to providing in this federal court action.  Novelty claimed that Mountain View was obligated to provide those documents under an agreement that the parties signed, a portion of which included Novelty's agreement to withdraw its Motion for Preliminary Injunction and Temporary Restraining Order.  As required by the Anti-Injunction Act, 28 U.S.C. § 2283, we declined to enjoin the filing of state court proceedings—despite our concerns that Novelty was engaging in "forum shopping" gamesmanship by proposing that a state court, rather than this Court, adjudicate that dispute.  [Dkt. 64 at 4.]  Unfortunately, that was not the last instance of Novelty's gamesmanship in evidence here, as our subsequent discussion about its answers to Mountain View's Third Set of Interrogatories reflects.

for Production of Documents, to Mountain View's Second Request for Production of Documents, and to Mountain View's Third Set of Interrogatories (respectively, the "<u>First RFP</u>," the "<u>Second RFP</u>," and the "<u>Interrogatories</u>").

**DISCUSSION**

"Courts have the power, and the responsibility, to advance the orderly and expeditious disposition of a case.  When a party flouts a Court's authority to do so, the Court may take action, under either its inherent powers or by virtue of the Federal Rules of Civil Procedure." *Corporate Express, Inc. v. US Office Products Co.,* 2000 WL 1644494, *6 (N.D. Ill. 2000) (quotation and citations omitted).  The same is true with respect to "conduct [that] abuses the judicial process."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 n.8, 44-45 (1991) (referencing both inherent authority and collecting provisions of the Federal Rules of Civil Procedure authorizing sanctions).

Mountain View first seeks to have sanctions imposed pursuant to the Court's inherent authority.  "Because of their very potency," courts generally must exercise "restraint and discretion" before exercising their inherent powers to sanction parties—or their counsel—for misconduct.  *Chambers*, 501 U.S. at 44-45.  However, the more serious the misconduct to be sanctioned, the more extensive the range of options available to the Court.  *See United States v. Johnson*, 327 F.3d 554, 563 (7th Cir. 2003) ("Generally, the harshest of sanctions based on inherent powers have been upheld only in situations involving bad faith, contumacy, or egregious misconduct.  Conversely, misconduct that is merely questionable warrants a less severe sanction…." (citations omitted)).  Punitive sanctions, such as an assessment of attorney's fees, require a finding of willfulness or bad faith, as do sanctions against counsel.  *Maynard v. Nygren*, 332 F.3d 462, 470-71 (7th Cir. 2003).  Remedial sanctions, however, do not require such

a showing.  *See Johnson*, 327 F.3d at 563 (affirming disgorgement of fees under inherent authority without finding of bad faith).

Mountain View also bases its requests for sanctions on Federal Rule of Civil Procedure 37(b)(2)(A), which authorizes sanctions when "a party…fails to obey an order to provide or permit discovery."  Fed. R. Civ. Pro. 37(b)(2)(A).  A sanction under Rule 37 requires a showing of "willfulness, bad faith, or fault."  *Am. Nat'l bank & Trust Co. v. Equitable Life Assur. Soc'y of the U.S.,* 406 F.3d 867, 878 (7th Cir. 2005) (quotation omitted).  For purposes of that section, "fault" concerns itself with "the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation."  *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992).  As with sanctions imposed pursuant to the Court's inherent authority, Rule 37(b)(2)(A) sanctions must be "proportionate to the circumstances surrounding the failure to comply with discovery," *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993).

**I.  The Court's July 1, 2009, Order:**

As relevant here, the magistrate judge's Order of July 1, 2009, required Novelty to do three things:  First, with respect to Mountain View's First RFP, Novelty was directed to "produce all documents, not specifically objected to or logged as privileged, no later than July 3, 2009."  [Dkt. 155 at 2.]  Second, with respect to Mountain View's Second RFP, Novelty was ordered to "produce (or log as privileged)" all documents responsive to Requests 38-42 [whose scope the magistrate judge had narrowed]…no later than July 10, 2009."  [*Id.*]  Third, also by July 10, 2009, Novelty was ordered to "serve its privilege log (one that meets Seventh Circuit

standards)" for Mountain View's Second RFP (except for documents responsive to Requests 46-51, which would be the subject of further briefing).  [*Id.* at 3.][3]

### A.  Novelty's Responses to Mountain View's Document Requests

Before going further, it is instructive to review a party's obligations to respond to document requests in the absence of a discovery order.

### 1.  Obligations When Responding to a Request for Production of Documents

Absent agreement of the parties or a court order, Federal Rule of Civil Procedure 34(b)(2)(A) requires a party to submit a proper response to a document request within thirty days after service.  A proper response has two components.

First, the responding party must state in writing, for each category requested, that "inspection…will be permitted as requested" or, if the responding party objects, the basis of that objection.  Fed. R. Civ. Pro. 34(b)(2)(B), (C).  Objections are valid only if they specifically apprise the opposing party, and the Court, about the nature of the otherwise responsive documents that the responding party will not produce.  *See Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 304 (D. Kan. 1996) ("When parties fail to make specific legitimate objections to particular interrogatories within the time allowed, the court may appropriately deem objections to those interrogatories waived.  The same can be said of failing to make specific legitimate objections to requests for production." (quotation omitted)).  Thus, "general objections" made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not "objections" at all—and will not be considered.  *See, e.g.*, *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (holding ineffective

---

[3] On July 13, 2009, Novelty withdrew its objections to Requests 46-51.  [Dkt. 163-3.]  Thus, it was required to specifically log any and all documents responsive to those requests that it claimed were privileged.

"general objections" even though the request indicated that production was "subject to and without waiving" those objections, because the objections were not presented "with sufficient specificity to enable this court to evaluate their merits"); *Burkybile v. Mitsubishi Motors Corp.*, 2006 U.S. Dist. LEXIS 57892, *20 (N.D. Ill. 2006) (collecting cases rejecting "reflexive invocation[s] of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence" (quotation omitted)).[4]

The second component of a proper response to a request for production requires the responding party—within the specified time—to actually produce the responsive documents for inspection or copying.  *See Langley v. Union Elec. Co.*, 107 F.3d 510, 513 (7th Cir. 1997) (upholding imposition of sanctions against party that failed to produce requested item for inspection, even though no motion to compel had been filed at the time of the failure).[5]  The obligation to produce responsive documents extends to all documents over which the party has control, not merely possession.  *See McBryar v. Int'l Union of United Auto. Aerospace & Agr. Implement Workers of Am.*, 160 F.R.D. 691, 695-96 (S.D. Ind. 1993) (holding that organizations must produce documents within the possession of their officers or agents/employees); *Triple Five v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002) ("Clearly, Defendants have a legal right to

---

[4] *See also St. Paul Reinsurance Co., Ltd. v. Comm'l Fin. Corp.*, 198 F.R.D. 508, 512-513 (N.D. Iowa 2000) (collecting cases holding that "boilerplate objections" asserted "without specifying how each request for production is deficient" are routinely deemed improper objections to discovery requests).

[5] *See also Fautek v. Montgomery Ward & Co., Inc.*, 96 F.R.D. 141, 145 (N.D. Ill 1982) ("There is no dispute between the parties that a culpable failure to produce documents in response to a request to produce can be the basis for sanctions under Fed. R. Civ. Pro. 37.  Parties are required to respond to requests to produce in a complete and accurate fashion."  (footnote and citations omitted)).

the documents and the ability to obtain the documents from their tax attorneys [representing them in another matter].  Thus, the appraisal information must be produced.").

If the responding party cannot conduct a "careful and thorough" search for all responsive documents within the thirty-day period, it "ha[s] an obligation to seek appropriate extensions," *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 2005 U.S. Dist. LEXIS 2866, *28 (S.D.N.Y. 2005), either by agreement or, if necessary, by a motion for time under Fed. R. Civ. Pro. 6.  Unilaterally deciding to conduct a cursory initial search to be followed by "rolling" productions from subsequent, more thorough, searches is not an acceptable option.  *Lava Trading*,  2005 U.S. Dist. LEXIS 2866, *28 (imposing sanctions).  Rule 34 guarantees that the requesting party will receive, concurrently with the response, **all** documents reasonably available.  *See A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) ("[A] party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery, and, based on that inquiry, a party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." (citations and quotation omitted).)  When the producing party's attorney signs the response, the attorney so certifies.  *See* Fed. R. Civ. Pro. 26(g)(1)(B)(i).

Once a party has served its response to a request for production, it "must supplement…its…response…in a timely manner if the party learns that in some material respect the…response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. Pro. 26(e)(1)(A).  A failure to do so can result in sanctions.  *Id.* 37(c)(1).  Nonetheless, a party can risk sanctions for not producing the documents originally:  If a party did not take "reasonable steps to ensure that [its] responses for production [were] complete and

accurate," later supplementation "does not absolve a party who has failed to produce the material in a timely fashion."  *Fautek*, 96 F.R.D. at 145 (citations and quotation omitted)).

### 2.   Novelty's Responses to Mountain View's First RFP

Mountain View requested that the Court impose a deadline for Novelty's providing complete responses to Mountain View's First RFP because Novelty had backed off assurances it had made in May 2009 that it had produced all responsive documents.  [*Compare* Dkt. 167-4 at 2 (May 15, 2009, email from Novelty's counsel stating:  "On the document issue, I think you're asking about if there were any other documents here in response to defendants' RFPs, and there don't appear to be any."), *with* Dkt. 167-11 at 2 (June 26, 2009, email requesting a status conference with the magistrate judge because "Novelty has objected to stating clearly whether it has any other documents that are related to its remaining infringement claims").]  Mountain View's concerns had, no doubt, been piqued by Novelty's ongoing production of documents— totaling 2,840 pages submitted on four separate dates between June 3 and June 18, 2009 (inclusive).  [Dkt. 176 at 3.][6]

In response to Mountain View's request, the magistrate judge imposed a July 3, 2009, production deadline, which the Court determined Novelty would have little difficulty meeting.  [Dkt. 155 at 2.]   Despite Novelty's May 2009 assurances about the completeness of its production, Novelty was required, pursuant to Rule 34, to have completely responded or properly objected prior to that time.  Mountain View served its First RFP on January 9, 2008; Novelty responded on February 8, 2008.  [Dkt. 167-2, 194-2.][7]  Following Novelty's October, 2008, First Amended Complaint, the parties stipulated that Novelty would voluntarily supplement its

_____

[6] Additionally, Novelty produced 812 pages of documents on June 30, 2009.  [*Id.*]  Novelty claims that this production was in response to Mountain View's Second RFP.  [Dkt. 179 at 8.]

[7] Novelty supplemented its responses on May 13, 2008, and July 14, 2008.  [Dkt. 194-3 and -4.]

previously served responses, reflecting the newly expanded scope of the case, by December 12, 2008, without revised discovery requests by Mountain View.  [Dkt. 100 at 2 (expanding the definition of "Accused Products" and "Novelty Designs" used in Mountain View's First RFP).]  *See also* Fed. R. Civ. Pro. 29(b) (permitting parties to stipulate regarding discovery procedures).  Thus, at the latest, Novelty should have produced all its responsive documents by December 12, 2008 (except perhaps for straggler documents or materials not previously discovered despite the exercise of reasonable diligence).

Several months later, on July 3, 2009, Novelty produced approximately 200 pages of documents plus 60,000 computer files.  [Dkt. 176 at 2.][8]  But, despite having been previously ordered to produce **all** responsive documents, Novelty also requested that Mountain View propose electronic search terms for Novelty's email server, thus obviously attempting to shift responsibility for ensuring the completeness of Novelty's production to Mountain View.  [Dkt. 167-15 at 3.]  Mountain View declined Novelty's invitation, properly so, requesting instead that Novelty confirm that production was finally complete.[9]  [Dkt. 167-17 at 2.]  (We have not been informed as to whether Novelty ever provided that confirmation.)  Novelty later produced more than 650 pages of additional responsive documents in four waves of disclosures occurring

---

[8] The hardcopy documents were mailed on July 3, 2009.  [Dkt. 167-3.]  The transmittal letter for those documents additionally advised that the computer files were available for inspection at Novelty's counsel's office.  [*Id.*]

[9] Novelty, the possessor of its documents, is better positioned to determine the content of its own documents.  Parties can, and should, work together to develop keywords when large amounts of electronic data must be searched for the sake of efficiency and cost-savings.  *Cf. Airtex Corp. v. Shelley Radiant Ceiling Co.,* 536 F.2d 145, 155 (7th Cir. 1976) (explaining that the discovery rules impose a "duty of cooperation" on the parties).  Those negotiations, however, are expected to precede (and hopefully obviate the need for) a motion to compel.  Once an order to produce is entered, however, the producing party is obligated to respond to the full extent of Federal Rule of Civil Procedure 34, unless otherwise expressly excused under the terms of the order.

between July 7 and July 22, 2009—well after the deadlines for production had passed. [Dkt. 176 at 3.]

Besides its complaint that Novelty has failed to make timely and complete production as required by Rule 34 and various Court orders, Mountain View raises several other, potentially more troubling, issues regarding the completeness of Novelty's responses to the First RFP, both before and after the Court's July 1, 2009, Order. Mountain View cites the deposition testimony of Novelty's vice-president, J.R. Merlau, in which he states that Novelty failed to ask any of its employees in China for any responsive documents—documents that Mountain View asserts it has "repeated[ly]" asked for. [Dkt. 166-2 at 15.] Mr. Merlau concedes that Novelty should have done so:

> **Q**   Nobody's made any effort to locate those [documents] to see if they exist?
>
> **A**   I mean, contacting factories and asking for artwork that's already been used, no, I didn't do that.
>
> **Q**   No effort?
>
> **A**   No. That's a good idea, though.
>
> **Q**   Yeah, you'd think it would have been done already.
>
> **A**   It would be good for us if it was.

[Dkt. 166-10 at 7]. "The fact that…documents are situated in a foreign county does not bar their discovery," if they are nonetheless subject to Novelty's control. *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984) (citation omitted).

In addition, Rick Lawson, a Novelty employee responsible for two of the products at issue, testified by deposition that he was not asked to review his emails for potentially responsive documents prior to July 6, 2009. This date was after the Court's deadline for production; indeed, it was months after the deadline for Novelty's original discovery responses. [Dkt. 166-5 at 5 ("**Q** … Up until Monday, had anyone asked you to look for -- **A** No. **Q** Did anyone ever ask you to

look for e-mails that might have any documents concerning the squeeze pens?  **A**  No, as far as I can recall.").]  During a break in his July 8, 2009, deposition, Mr. Lawson returned to his office and retrieved what Mountain View contends were additional previously-unproduced documents. [Dkt. 166-6.]

Linda Chandler, another Novelty employee, testified that, in 2008, she had provided Novelty's counsel with an unfiled copyright application that Mountain View maintains related to the products in Novelty's original complaint.  [Dkt. 166-4 at 4, 179 at 8, 181 at 10.]  That document was not produced by Novelty until June 30, 2009.  [Dkt. 166-12, 167-16.]

Finally, another Novelty employee, Mike Kent, testified that his document collection instructions were to collect only those documents that proved that Novelty created the designs at issue in this case, and thus would be helpful to Novelty's litigation position:

> **Q**  You didn't take your instruction to be go and find all documents that relate to the squeeze pen; is that fair?
>
> **A**  I took my instruction to be find files that prove that we created the item or the artwork.
>
> **Q**  You didn't take from that turn over every file that had to do with a squeeze pen?
>
> **A**  I didn't.
>
> **Q**  Would that be the same for all the products that you were asked to go look for documents?
>
> **A**  Correct.

[Dkt. 166-8 at 4.]  Producing only those documents that are deemed helpful to the producing party's litigation position—parsing out the bad from the good—is, of course, impermissible.  A litigant cannot limit its discovery so as to ascribe unto itself the role of judge and jury.  *1100 West, LLC v. Red Spot Paint & Varnish Co.*, 2009 U.S. Dist. LEXIS 47439, *78 (S.D. Ind. 2009).  *See also United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (explaining that the liberal discovery provisions of the Federal Rules are designed to make "trial less a game

of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.").

Novelty maintains that its response to Mountain View's First RFP has been timely and complete. Any documents it produced after it confirmed, in May 2009, the completeness of its production did not relate to the First RFP; rather, according to Novelty, they were responsive to the Second RFP, the Interrogatories, or "various other informal document requests." [Dkt. 208 at 3.] Novelty has submitted the affidavits from Messers. Merlau and Kent and others attesting to the thoroughness of Novelty's search and to the completeness of its production. [*See* Dkt. 179-3 to 179-6.]

Mountain View's allegations of discovery failures and abuses by Novelty require further development at an evidentiary hearing before the Court can determine the need for and extent of sanctions. Neither party has provided us with an adequate description of the documents that were produced after the July 3, 2009, deadline, or the details of what Novelty claims were "informal" document requests by Mountain View. Without a clear understanding of such information, we do not know whether the documents produced were, in fact, responsive to Mountain View's First RFP, and thus untimely.

In addition, in various important respects the deposition testimony that Mountain View has cited and the affidavits submitted by Novelty conflict with one another. Arguably, the Court could, as Mountain View suggests, rely upon the line of cases holding that deponents cannot generally contradict their own testimony via affidavit. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998). Or we could also simply disregard the many statements in the

affidavits that are conclusory.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889-90 (1990).[10]

But even Mountain View does not claim that all the affiants' sworn statements contradict their

deposition testimony (assuming all were deposed), and not all the affidavits are wholly

conclusory.  The conflicts that remain cannot be resolved on the written record before us.  Before

we make a determination, justice requires a full exploration of the facts underlying Mountain

View's allegations.

Accordingly, we hereby refer these matters to the assigned Magistrate Judge to conduct

an evidentiary hearing into issues relating to the timeliness and completeness of Novelty's

responses to Mountain View's First RFP.  Specifically, we direct the Magistrate Judge to require

the parties to respond, inter alia, to the following issues:

- Did Novelty comply with the July 3, 2009, production deadline for Mountain View's First RFP?

- Did Novelty's initial response, along with its formal supplementations, satisfy its obligations under Federal Rule of Civil Procedure 34 and with the certification required under Federal Rule of Civil Procedure 26(g)(1)?

- Did Novelty "timely" supplement its responses with any additional responsive documents discovered after its original response?

- What sanctions, if any, are appropriate as an exercise of the Court's inherent authority or pursuant the Federal Rules of Civil Procedure, or both?

Pending receipt of the Magistrate Judge's report and recommendation, we hereby stay any

decision on sanctions with respect to Novelty's responses to Mountain View's First RFP.

---

[10] For example, Mr. Merlau avers that he "instructed employees in the art and IT departments to conduct document searches for artwork and other documents related to This Case [sic]."  [Dkt. 179-4 ¶11.]  That statement does not answer the question presented here:  **What** did Novelty do to satisfy its discovery obligations, nor does it explain how he determined what was, and was not, "relevant."

### 3.   Mountain View's Second RFP

Mountain View also seeks sanctions against Novelty based on insufficient responses to its Second RFP, arguing that Novelty has not produced all required documents per the Court's July 1, 2009, Order.  In support of this claim, Mountain View contrasts the fewer than 2,000 pages of documents produced by Novelty with Novelty's complaints about the "onerous and oppressive" Second RFP and the "heroic" efforts that Novelty claims to have undertaken in order to respond to it.  [Dkt. 179 at 18.]  Mountain View's reply brief promised a detailed analysis of the insufficiency of Novelty's production as part of the upcoming depositions of Novelty employees.  [Dkt. 181 at 15.]

Novelty, in turn, asserts that it has, in fact, produced 6,000 pages of discovery materials in response to the Second RFP.  (A dispute remains over whether documents were produced in response to the First RFP or the Second RFP.)  More succinctly, according to Novelty, it has produced all that it has.  [*See* Dkt. 208 at 12.]  However, Novelty concedes that it produced certain additional responsive documents to Mountain View's Second RFP after the July 10th deadline for doing so.  [*See id.* (explaining that responsive documents were produced on June 15, July 10, July 13, July 16 and again on July 17, 2009).]

Again, the factual record is not sufficiently developed for the Court to determine what sanctions, if any, may be appropriate here.  For example, we do not know what Mountain View learned during the upcoming depositions referenced in its reply brief.  Thus, this matter is also referred to the Magistrate Judge for development at the evidentiary hearing.  We request that the report and recommendation to be prepared by the Magistrate Judge also include discussion of the same four questions with respect to Novelty's responses to the Second RFP as we previously detailed with respect to its responses to the First RFP.

-14-

## B.  Novelty's Privilege Log for the Second RFP

As referenced previously, Novelty was ordered to "serve its privilege log (one that meets Seventh Circuit standards) no later than July 10, 2009" for documents responsive to Mountain View's Second RFP.  [Dkt. 155 at 3.]  The record before us establishes that Novelty failed to do so in the following two respects.

First, although Mountain View does not specifically complain of this, Novelty once again missed the deadline imposed by the Court:  Novelty served its privilege log on July 14, 2009, rather than, as ordered, on July 10, 2009.  [Dkt. 167-18 at 2 (Plaintiff's counsel's letter of July 14, 2009, enclosing Novelty's privilege log for Mountain View's Second RFP); *see also* Dkt. 179-12 at 2 (Plaintiff's counsel's letter of July 10, 2009 transmitting documents responsive to Mountain View's Second RFP and advising that a privilege log would follow under separate cover).]  If Novelty needed more time to prepare its privilege log (and apparently it did), it should have formally sought and received an extension of time, so that its explanation of its inability to meet the deadline could be reviewed by the Court.  Unilaterally granting itself a continuance of the operative deadline is impermissible.  *See Sugimoto v. Araserve, Inc.*, 1992 U.S. Dist. LEXIS 12785, *6 (N.D. Ill. 1992) ("[A] failure to meet a court-ordered deadline is a contempt of court….If plaintiff was unable to comply with that order,… it was incumbent upon her to move for an extension of time for filing her responses."); *Johnson v. Hix Wrecker Serv.*, 2009 U.S. Dist. LEXIS 60868, *6 n.2 (S.D. Ind. 2009) ("[S]anctions easily could have been avoided if defense counsel had simply filed timely motions for extension of time to respond to discovery, rather than simply ignoring his discovery obligations.").

Novelty's self-help approach is inappropriate for another reason.  As Mountain View correctly notes, the privilege log that Novelty served is conspicuously deficient under the

applicable standards for such set out by our Circuit Court of Appeals. Recall that the Court's July 1, 2009, Order explicitly directed Novelty to meet the applicable Seventh Circuit's standards. When a party intends to assert privilege over a document to avoid producing in response to a document request, "the party must…describe the nature of the documents…not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. Pro. 26(b)(5)(A)(ii). A proper privilege log requires a document-by-document description of the privilege asserted and the facts supporting it. *See Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006) (explaining a privilege log must "describe[] the nature of **each** document being withheld" (emphasis added)); *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("An assertion of privilege must…be made on a document-by-document basis." (citations omitted)). That description generally must include all the following information:

> (1) the name and job title or capacity of the author(s)/originator(s);
>
> (2) the names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party;
>
> (3) a general description of the document by type (e.g., letter, memorandum, report);
>
> (4) the date of the document; and
>
> (5) a general description of the subject matter of the document.

*In re Bridgestone/Firestone, Inc.*, *ATX, ATX II, & Wilderness Tires Prods. Liab. Litig*., 129 F. Supp. 2d 1207, 1218-19 (S.D. Ind. 2001).

Despite the clear, well-settled law governing the required content of privilege logs in this Circuit, Novelty's privilege log offers only blanket assertions of privilege, devoid of the factual basis necessary to properly establish entitlement to some evidentiary privilege. Novelty's privilege log, in its entirety, reads as follows:

| Doc Name | Privilege Stated |
|---|---|
| Emails exchanged between Novelty, Inc. and Overhauser Law Offices April 20, 2007 – present | Counsel for Novelty would object to Novelty having to produce these documents on the grounds that such documents constitute work product and/or are protected by the attorney-client privilege |
| Document prepared by counsel for Novelty regarding Mountain View | Counsel for Novelty would object to Novelty having to produce this document and all drafts thereof on the grounds that such documents constitute work product and/or are protected by the attorney-client privilege |
| August 12 – 13 emails between Novelty employees regarding communications with Novelty's attorneys | Counsel for Novelty would object to Novelty having to produce this document and all drafts thereof on the grounds that such documents constitute work product and/or are protected by the attorney-client privilege |

[Dkt. 167-18 at 3.][11]

For good and apparent reasons, Novelty sidesteps any specific contention that this log complies with Seventh Circuit standards, simply asserting, but without citation to any authority, that the log is nonetheless acceptable because Defendants have not provided a privilege log for any of their post-filing-of-lawsuit communications or work product. [*See* Dkt. 179 at 7.] Such an argument does not carry the day. First, that Novelty's response in no sense excuses its failure to log the "Emails exchanged between Novelty, Inc. and Overhauser Law Offices April 20,

---

[11] We note that the first entry on the privilege log relating to "[e]mails exchanged between Novelty, Inc. and Overhauser law Offices April 20, 2007 – present" is also the sole entry on the privilege log that Novelty submitted on July 3, 2009. [Dkt. 167-15 at 4.] That was the date by which the Court's July 1, 2009, Order required Novelty to provide its privilege log for Mountain View's First RFP. [Dkt. 155 at 2.] The parties do not indicate whether this log relates to Mountain View's First RFP or to Mountain View's Second RFP. Either way, it fails to qualify as a privilege log as that term is used in this Circuit; therefore, Novelty has failed under the Court's July 1, 2009, Order.

2007" through the September 25, 2007, filing of the Complaint.  Second, even if the parties' attorneys counsel implicitly (giving Novelty's contention its most liberal interpretation) agreed to follow "local custom" exempting post-filing-of-lawsuit documents from being specifically logged with respect to Mountain View's First RFP, no such explanation or defense has been asserted by Novelty for its failures with respect to Mountain View's Second RFP.  Mountain View's Second RFP explicitly sought post-filing-of-lawsuit documents, which would be relevant to Mountain View's abuse-of-process claim.  [*See, e.g.*, Dkt. 167-3 at Request for Production No. 61 ("All communications between Novelty and its legal counsel relating to Novelty's decision to remove 10 products and/or designs from Novelty's claims in this case through the filing of Novelty's Second Amended Complaint.")].[12]  Thus, whatever implicit understandings Novelty thought pertained to its privilege log were no longer operative once "the court order[ed] otherwise," Fed. R. Civ. Pro. 29, which the Court expressly did in its July 1, 2009, Order.  [Dkt. 155 at 3 (requiring that Novelty serve a log that complies with "Seventh Circuit standards")].

Based on the record before us, it is clear that Novelty's refusal to comply with the Court's July 1, 2009, Order to provide a proper privilege log reflects its willfulness, bad faith, and "fault."  Its refusal, continuing even to this date, warrants the imposition of sanctions under Rule 37.  The sanction proposed by Mountain View is that the Court find that Novelty has waived any discovery privileges that it might have otherwise properly asserted over the documents responsive to Mountain View's Second RFP had it provided a proper privilege log.

---

[12] To the extent that Novelty is attempting to argue that there was no such agreement and that Defendants had violated their own discovery obligations, we relegate our response to this argument to a footnote, which is all it merits.  If Novelty truly believes that Defendants have not complied with the privilege log requirements that the Federal Rules of Civil Procedure impose on them as well as every other litigant, Novelty may move for an order compelling Mountain View's compliance.  But we reject out-of-hand any suggestion that Novelty's noncompliance with this Court's orders is subject to an if-you-can-do-it-then-I-can-do-it-too defense.

See, e.g., *Muro v. Target Corp.*, 250 F.R.D. 350, 365 (N.D. Ill. 2007) ("An order that privileged documents be disclosed as a sanction is appropriate…if the party that authored the log has displayed willfulness, bad faith or fault." (citations omitted)).  This is obviously a severe sanction, but "evidence of foot-dragging or [of] a cavalier attitude towards following court orders and the discovery rules" warrants strong action by the Court.  *Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001).  Given the abundant and uncontroverted evidence of Novelty's cavalier and callous disregard toward the Court's orders and the discovery rules, we hold that such a sanction is necessary and appropriate.

Accordingly, we **OVERRULE** and **DENY** all claims of attorney-client privilege and work-product immunity that Novelty previously purported to assert in response to Mountain View's Second RFP and **ORDER** Novelty to produce within **seven days** of the date of this entry all such referenced material previously withheld on the basis of privilege.[13]

**II.  The Court's July 23, 2009, Order:**

Mountain View also claims that Novelty is subject to sanctions for its non-compliance with the Court-ordered deadline for service of its responses to Mountain View's Interrogatories. The Court ordered in its Entry of July 23, 2009, that Novelty "answer" those interrogatories "no later than **July 31, 2009**."  [Dkt. 177 at 1 (emphasis in original).]

---

[13] In the absence of any complaint about Novelty's privilege log for the First RFP, we do not impose sanctions for any of its deficiencies. *See supra n.* 11.  The sanctions imposed here relate only to the privilege log applicable to the Second RFP.  That set of requests arguably encompassed many documents also responsive to the First RFP.  Thus, to clarify and fully effectuate the sanctions, Novelty is prohibited from asserting or maintaining privilege over any document responsive to the Second RFP, even if that document was also responsive to the First RFP, with one exception.  For any document responsive to the First RFP that Novelty **properly** logged as privileged on or before the Court's July 3, 2009, deadline, Novelty may continue to assert and maintain privilege over that document and withhold it from disclosure on that basis to Mountain View.  No such privilege log for the First RFP has been presented to us, but if one exists, Novelty may continue to rely upon it.

In seeking this sanction, Mountain View relies upon an oral comment made by the magistrate judge during the hearing memorialized in the July 23, 2009, Entry.  The magistrate judge said:  "So we'll show that your answers to the third set of interrogatories are due Friday, July 31st.  And then that will – it's  not a long time to be sure.  That will give you the weekend." [7/22/09 Hearing Rough Draft Transcript at 10.][14]  Mountain View interprets that statement to have meant that Novelty was required to ensure that Mountain View actually received the interrogatory answers on July 31, 2009.  Because Novelty **mailed** the answers on that date [Dkt. 189-2 at 35], Mountain View, of course, received them several days later.  Thus, according to Mountain View, Novelty's violation of the Court's express directive should be sanctioned.

On this one, we disagree with Mountain View.   Federal Rule of Civil Procedure 5 authorizes several methods of serving documents.   One of the ways explicitly authorized is service by mail, which "is complete upon mailing."  Fed. R. Civ. Pro. 5(b)(2)(C).  The magistrate judge's statement during the hearing did not unambiguously foreclose Novelty's right to employ service by mail.  Nor does anything so provide in the July 23, 2009, Entry.  Novelty's action does not warrant a sanction when Novelty appears to have relied upon Federal Rule of Civil Procedure 5 in serving its answers to interrogatories.  *Cf. D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 462 (7th Cir. 1993) ("[A]mbiguity precludes a finding of contempt." (citation omitted)).  Because Novelty properly served its interrogatory answers by July 31 2009, as required by the Court's July 23, 2009, Entry, no sanction shall issue, and this request by Mountain View is **DENIED**.

---

[14] No party ordered the Court Reporter to formally prepare the transcript, so it remains in rough draft form, but is nonetheless accessible to us.

That said, we pause to note that Novelty's decision about the manner of serving the interrogatory answers leaves us somewhat dismayed.  At the hearing before the magistrate judge, Novelty had argued that it had not previously responded to Mountain View's Third Set of Interrogatories because it had never received them in the mail.  Relying upon Novelty's counsel's representations that no one in his office had received them, and upon Defendants' failure to send a customary courtesy electronic copy, the magistrate judge concluded that Mountain View's Third Set of Interrogatories had apparently been lost in the mail.  [7/22/09 Hearing Rough Draft Transcript at 10.]  Given that history, we think it would have been reasonable to assume that no reasonably acting counsel would again choose a course of conduct that might require him or her to have to rebut the presumption of the Post Office's reliability in arguments before the same judicial officer.  More precisely, one might reasonably have assumed that Novelty's counsel would have sent an electronic copy of Novelty's answers to Mountain View's Interrogatories in addition to the having sent the mailed copies.  Clearly, that reflects the intent of the magistrate judge when she told Mountain View that it would have the "weekend" to review Novelty's Interrogatory answers.

Indeed, the record reflects that Novelty's counsel would also have understood at the time of the ruling by the magistrate judge that the Interrogatory answers were expected to be delivered to and received by Mountain View by Friday, July 31, 2009,  so Mountain View's counsel could prepare for depositions scheduled for August 4 and 5, 2009.  [*Id.* at 5.]  It would not be unreasonable to expect Novelty's counsel to have provided an advance electronic copy to facilitate Mountain View's counsel's preparations.  *Cf.* Standards of Prof. Cond. Within the 7th Fed. Jud. Cir., Lawyers' Duties to Other Counsel, Standard 1 ("We will treat all other counsel…in a civil and courteous manner…."), Standard 10 ("We will not use any form of

discovery or discovery scheduling as a means of harassment.").  What occurred here with respect to Novelty's method of providing this discovery smacks of the kind of gamesmanship that, when it occurs, deserves and receives the disapprobation of every one of this Court's judges as well as the vast majority of the members of its bar.

In sum, while we **DENY** the Motion for Sanctions with respect to Novelty's service of its answers to Mountain View's Third Set of Interrogatories, to avoid any such future disputes or confusion, we also now **ORDER** henceforth that **all parties** to this litigation exchange courtesy electronic copies (via facsimile or email) of all papers served under Federal Rule of Civil Procedure 5(b)(2)(B) (leaving paper at party's office or home) or 5(b)(2)(C) (service by mail), unless there is an **express** agreement or order of the Court providing otherwise.

### CONCLUSION

The evidentiary record before us is insufficient to allow a final determination as to whether, or what, sanctions might be appropriate based on Novelty's discovery failures in its responses to Mountain View's First and Second RFP.  The magistrate judge, therefore, is requested to schedule and conduct an evidentiary hearing at her earliest convenience and, on the basis of her findings and conclusions, to issue a report and recommendation to the undersigned judge.

It is further **ORDERED** that Novelty be deemed to have waived all privileges it may otherwise have had relating to the documents responsive to Mountain View's Second RFP, based upon Novelty's failures to properly develop and assert a privilege log.  These documents shall be produced in full within seven (7) days of the date of this Entry.

No sanctions relating to the service of Novelty's responses to Mountain View's Interrogatories shall be imposed.  Mountain View's Motion for Sanctions is thus **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that henceforth any party in this litigation serving a paper or other material pursuant to Federal Rule of Civil Procedure 5(b)(2)(B) or 5(b)(2)(C) shall provide a courtesy electronic copy to all opposing counsel of record, unless expressly relieved of the obligation to do so by the Court or by opposing counsel.

Additionally, Novelty's request for oral argument on these matters is **GRANTED IN PART** and **DENIED IN PART**.  The parties will be permitted to present legal arguments in conjunction with the evidentiary hearing before the magistrate judge.

So ordered.

Date:  10/21/2009

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

**Distribution via ECF:**

Margaret M. Christensen
BINGHAM MCHALE LLP
mchristensen@binghammchale.com

James M. Hinshaw
BINGHAM MCHALE LLP
jhinshaw@binghammchale.com

Eric E. Lamb
OVERHAUSER & LINDMAN, LLC
elamb@overhauser.com

Michael R. Limrick
BINGHAM MCHALE LLP
mlimrick@binghammchale.com

Tami L. Napier
OVERHAUSER & LINDMAN, LLC
tnapier@overhauser.com

Paul B. Overhauser
OVERHAUSER  & LINDMAN, LLC
poverhauser@overhauser.com